**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA**

MAXINE VICTORIA TURNER,     )
                                      )
               Plaintiff,     )
                                      )
                 v.             )     1:13CV00761
                                      )
CAROLYN W. COLVIN,        )
Acting Commissioner of Social    )
Security,                 )
                                      )
              Defendant.    )

**MEMORANDUM OPINION AND RECOMMENDATION
OF UNITED STATES MAGISTRATE JUDGE**

Plaintiff, Maxine Victoria Turner, brought this action pursuant to the Social Security Act (the "Act") to obtain judicial review of a final decision of Defendant, the Commissioner of Social Security, denying Plaintiff's claim for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI"). (Docket Entry 1.) The Court has before it the certified administrative record (cited herein as "Tr. __"), as well as the parties' cross-motions for judgment (Docket Entries 15, 17). For the reasons that follow, the Court should enter judgment for Defendant.

**I.  PROCEDURAL HISTORY**

Plaintiff filed an application for DIB and SSI on May 13, 2010 (protective filing date), alleging a disability onset date of October 9, 2007. (Tr. 101-07.) Upon denial of that application (Tr. 46-47, 49-57), Plaintiff requested a hearing de novo before an Administrative Law Judge ("ALJ") (Tr. 58-59). Plaintiff, her

attorney, and a vocational expert ("VE") attended the hearing. (Tr. 29-45.) By decision dated November 30, 2011, the ALJ determined that Plaintiff was not disabled under the Act. (Tr. 11-25.) On July 10, 2013, the Appeals Council denied Plaintiff's request for review (Tr. 1-6), making the ALJ's ruling the Commissioner's final decision for purposes of judicial review.

In rendering that disability determination, the ALJ made the following findings later adopted by the Commissioner:

1.    [Plaintiff] meets the insured status requirements of the [] Act through September 30, 2011.

2.    [Plaintiff] has not engaged in substantial gainful activity since October 9, 2007, the alleged onset date.

3.    [Plaintiff] has the following severe impairments: osteoarthritis, degenerative joint disease, obesity, a mood disorder and hypertension, well-controlled with medication.

. . . .

4.    [Plaintiff] does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1.

. . . .

5.    . . . [Plaintiff] has the residual functional capacity to perform light work . . . however, she requires a sit/stand option. Further, she is limited to simple routine repetitive tasks involving minimal contact with the public.

. . . .

6.    [Plaintiff] is unable to perform any past relevant work.

. . . .

> 10. Considering [Plaintiff's] age, education, work
>     experience, and residual functional capacity, there are
>     jobs that exist in significant numbers in the national
>     economy that [Plaintiff] can perform.
>
> . . . .
>
> 11. [Plaintiff] has not been under a disability, as defined
>     in the [] Act, from October 9, 2007, through the date of
>     this decision.

(Tr. 16-25 (internal parenthetical citations omitted).)

## II.  DISCUSSION

Federal law "authorizes judicial review of the Social Security Commissioner's denial of social security benefits." <u>Hines v. Barnhart</u>, 453 F.3d 559, 561 (4th Cir. 2006).  However, "the scope of [the Court's] review of [such a] decision . . . is extremely limited." <u>Frady v. Harris</u>, 646 F.2d 143, 144 (4th Cir. 1981).

### A.  Standard of Review

"[C]ourts are not to try [a Social Security] case de novo." <u>Oppenheim v. Finch</u>, 495 F.2d 396, 397 (4th Cir. 1974).  Instead, the Court "must uphold the factual findings of the ALJ [underlying the denial of benefits] if they are supported by substantial evidence and were reached through application of the correct legal standard." <u>Hines</u>, 453 F.3d at 561 (internal brackets and quotation marks omitted).  "Substantial evidence means 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" <u>Hunter v. Sullivan</u>, 993 F.2d 31, 34 (4th Cir. 1992) (quoting <u>Richardson v. Perales</u>, 402 U.S. 389, 390 (1971)). "It consists of more than a mere scintilla of evidence but may be

somewhat less than a preponderance." <u>Mastro v. Apfel</u>, 270 F.3d 171, 176 (4th Cir. 2001) (internal citations and quotation marks omitted). "If there is evidence to justify a refusal to direct a verdict were the case before a jury, then there is substantial evidence." <u>Hunter</u>, 993 F.2d at 34 (internal quotation marks omitted).

"In reviewing for substantial evidence, the [C]ourt should not undertake to re-weigh conflicting evidence, make credibility determinations, or substitute its judgment for that of the [ALJ, as adopted by the Social Security Commissioner]." <u>Mastro</u>, 270 F.3d at 176 (internal brackets and quotation marks omitted). "Where conflicting evidence allows reasonable minds to differ as to whether a claimant is disabled, the responsibility for that decision falls on the [Social Security Commissioner] (or the ALJ)." <u>Id.</u> at 179 (internal quotation marks omitted). "The issue before [the reviewing court], therefore, is not whether [the claimant] is disabled, but whether the ALJ's finding that [the claimant] is not disabled is supported by substantial evidence and was reached based upon a correct application of the relevant law." <u>Craig v. Chater</u>, 76 F.3d 585, 589 (4th Cir. 1996).

When confronting that issue, the Court must take note that "[a] claimant for disability benefits bears the burden of proving a disability," <u>Hall v. Harris</u>, 658 F.2d 260, 264 (4th Cir. 1981), and that, in this context, "disability" means the "'inability to

engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months.'" <u>Id.</u> (quoting 42 U.S.C. § 423(d)(1)(A)).[1] "To regularize the adjudicative process, the Social Security Administration has . . . detailed regulations incorporating longstanding medical-vocational evaluation policies that take into account a claimant's age, education, and work experience in addition to [the claimant's] medical condition." <u>Id.</u> "These regulations establish a 'sequential evaluation process' to determine whether a claimant is disabled." <u>Id.</u> (internal citations omitted).

This sequential evaluation process ("SEP") has up to five steps: "The claimant (1) must not be engaged in 'substantial gainful activity,' <i>i.e.</i>, currently working; and (2) must have a 'severe' impairment that (3) meets or exceeds the 'listings' of specified impairments, or is otherwise incapacitating to the extent that the claimant does not possess the residual functional capacity to (4) perform [the claimant's] past work or (5) any other work." <u>Albright v. Comm'r of the Soc. Sec. Admin.</u>, 174 F.3d 473, 475 n.2

---

[1] The Act "comprises two disability benefits programs. [DIB] . . . provides benefits to disabled persons who have contributed to the program while employed. [SSI] . . . provides benefits to indigent disabled persons. The statutory definitions and the regulations . . . for determining disability governing these two programs are, in all aspects relevant here, substantively identical." <u>Craig</u>, 76 F.3d at 589 n.1 (internal citations omitted).

(4th Cir. 1999).[2]  A finding adverse to the claimant at any of several points in the SEP forecloses an award and ends the inquiry. For example, "[t]he first step determines whether the claimant is engaged in 'substantial gainful activity.' If the claimant is working, benefits are denied.  The second step determines if the claimant is 'severely' disabled.  If not, benefits are denied." Bennett v. Sullivan, 917 F.2d 157, 159 (4th Cir. 1990).

On the other hand, if a claimant carries his or her burden at each of the first three steps, the "claimant is disabled." Mastro, 270 F.3d at 177.  Alternatively, if a claimant clears steps one and two, but falters at step three, *i.e.*, "[i]f a claimant's impairment is not sufficiently severe to equal or exceed a listed impairment, the ALJ must assess the claimant's residual functional capacity ('RFC')." Id. at 179.[3]  Step four then requires the ALJ to assess whether, based on that RFC, the claimant can perform past relevant work; if so, the claimant does not qualify as disabled.  Id. at 179-80.  However, if the claimant establishes an inability to

[2]  "Through the fourth step, the burden of production and proof is on the claimant.  If the claimant reaches step five, the burden shifts to the [Commissioner] . . . ." Hunter, 993 F.2d at 35 (internal citations omitted).

[3]  "RFC is a measurement of the most a claimant can do despite [the claimant's] limitations." Hines, 453 F.3d at 562 (noting that administrative regulations require RFC to reflect claimant's "ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis . . . [which] means 8 hours a day, for 5 days a week, or an equivalent work schedule" (internal emphasis and quotation marks omitted)).  The RFC includes both a "physical exertional or strength limitation" that assesses the claimant's "ability to do sedentary, light, medium, heavy, or very heavy work," as well as "nonexertional limitations (mental, sensory, or skin impairments)." Hall, 658 F.2d at 265.  "RFC is to be determined by the ALJ only after [the ALJ] considers all relevant evidence of a claimant's impairments and any related symptoms (*e.g.*, pain)." Hines, 453 F.3d at 562-63.

return to prior work, the analysis proceeds to the fifth step, whereupon the ALJ must decide "whether the claimant is able to perform other work considering both [the claimant's RFC] and [the claimant's] vocational capabilities (age, education, and past work experience) to adjust to a new job."  Hall, 658 F.2d at 264-65. If, at this step, the Commissioner cannot carry its "evidentiary burden of proving that [the claimant] remains able to work other jobs available in the community," the claimant qualifies as disabled.  Hines, 453 F.3d at 567.[4]

## B.  Assignments of Error

Plaintiff contends that the Court should overturn the ALJ's finding of no disability on these grounds:

1) in formulating the RFC, the ALJ failed to give appropriate weight to the opinion of Plaintiff's primary care physician (Docket Entry 16 at 4-12);

(2) the ALJ erred by failing to define in the RFC how often Plaintiff would need to alternate between sitting and standing (id. at 12-15);

(3) the ALJ's mental RFC, limiting Plaintiff to "simple routine repetitive tasks involving minimal contact with the

---

[4]  A claimant thus can establish disability via two paths through the SEP.  The first path requires resolution of the questions at steps one, two, and three in the claimant's favor, whereas, on the second path, the claimant must prevail at steps one, two, four, and five.  Some short-hand judicial characterizations of the SEP appear to gloss over the fact that an adverse finding against a claimant on step three does not terminate the analysis.  See, e.g., Hunter, 993 F.2d at 35 ("If the ALJ finds that a claimant has not satisfied any step of the process, review does not proceed to the next step.").

public," does not incorporate his own finding that Plaintiff's mental impairments impose a moderate limitation on her ability to maintain concentration, persistence, and pace (id. at 15-17); and

(4) the ALJ failed, beyond a summary conclusion, to evaluate the combined effect of Plaintiff's impairments on her ability to work (id. at 17-19).

Defendant contends otherwise and seeks affirmance of the ALJ's decision. (Docket Entry 18 at 5-12.)

## 1. Treating Physician Opinion

In her first issue on review, Plaintiff challenges the ALJ's evaluation of the opinions of primary care physician Dr. Jack Todd Wahrenberger, who concluded that Plaintiff's impairments disabled her as of May 26, 2011. (Docket Entry 16 at 4-12 (citing Tr. 543-44.) Contrary to the ALJ's analysis, Plaintiff asserts that Dr. Wahrenberger's opinions reflect consistency both with his own treatment notes and with other medical evidence of record, including the findings of consultative physician Dr. Louis E. Leff (Tr. 156-58), and Plaintiff's own statements on a Function Report and at the hearing (Tr. 34-36, 39-41, 135). (Docket Entry 16 at 7-8.) Plaintiff contends that the ALJ further erred by giving "great weight" to the state agency non-examining physician's opinion, because that physician provided his opinion "before important evidence [such as Dr. Wahrenberger's records and disability

opinion] was introduced into the record." (<u>Id.</u> at 11.)
Plaintiff's argument on these points falls short.

The treating source rule generally requires an ALJ to give
controlling weight to the opinion of a treating source regarding
the nature and severity of a claimant's impairment. 20 C.F.R.
§§ 404.1527(c)(2), 416.927(c) ("[T]reating sources . . . provide a
detailed, longitudinal picture of [a claimant's] medical
impairment(s) and may bring a unique perspective to the medical
evidence that cannot be obtained from the objective medical
findings alone or from reports of individual examinations, such as
consultative examinations or brief hospitalizations."). The rule
also recognizes, however, that not all treating sources or treating
source opinions merit the same deference. The nature and extent of
each treatment relationship appreciably tempers the weight an ALJ
affords an opinion. 20 C.F.R. §§ 404.1527(c)(2)(ii),
416.927(c)(2)(ii). Moreover, as subsections (2) through (4) of the
rule describe in great detail, a treating source's opinion, like
all medical opinions, deserves deference <u>only</u> if well-supported by
medical signs and laboratory findings <u>and</u> consistent with the other
substantial evidence in the case record. 20 C.F.R.
§§ 404.1527(c)(2)-(4), 416.927(c)(2)-(4). "[I]f a physician's
opinion is not supported by clinical evidence <u>or</u> if it is
inconsistent with other substantial evidence, it should be accorded
significantly less weight." <u>Craig</u>, 76 F.3d at 590 (emphasis

added).[5]  Finally, opinions by physicians regarding the ultimate issue of disability and other such findings dispositive of a case do not receive controlling weight because the Commissioner reserves the authority to render such decisions.  20 C.F.R. §§ 404.1527(e), 416.927(e).

In this case, on October 12, 2011, Dr. Wahrenberger completed an RFC questionnaire.  (See Tr. 543-45.)  Dr. Wahrenberger reported that Plaintiff suffered from "severe osteoarthritis" (Tr. 543) in her "hips, knees [and] shoulders" (Tr. 545) and, as a result of that impairment, opined that Plaintiff could perform less than a full range of sedentary work (including significant limitations on her ability to stand/walk, sit, lift, push/pull, bend, squat, crawl, and climb; a need to rest during an eight-hour work day in excess of standard breaks; and absence from work or inability to complete a work day in excess of fifteen days per month) (Tr. 543-44).  As a result of those limitations, Dr. Wahrenberger concluded

---

[5]  According to Plaintiff, "Fourth Circuit precedent requires that the opinion of a claimant's treating physician be given great weight and may be disregarded only if there is persuasive contradictory evidence."  (Docket Entry 16 at 10 (citing Coffman v. Bowen, 829 F.2d 514, 517 (4th Cir. 1987); Foster v. Heckler, 780 F.2d 1125, 1130 (4th Cir. 1986); Mitchell v. Schweiker, 699 F.2d 185, 187 (4th Cir. 1983)).)  Plaintiff's phrasing of the "treating physician rule," however, no longer represents the governing standard.  See Stroup v. Apfel, No. 96-1722, 205 F.3d 1334 (table), 2000 WL 216620, at *5 (4th Cir. Feb. 24, 2000) (unpublished) ("The 1991 regulations supersede the 'treating physician rule' from our prior case law."); Shrewsbury v. Chater, No. 94-2235, 68 F.3d 461 (table), 1995 WL 592236, at *2 n.5 (4th Cir. Oct. 6, 1995) (unpublished) ("As regulations supersede contrary precedent, the cases cited by [the plaintiff] defining the scope of the 'treating physician rule' decided prior to 20 C.F.R. § 416 and related regulations are not controlling." (internal citation omitted)); accord Brown v. Astrue, Civil Action No. CBD-10-1238, 2013 WL 937549, at *4 (D. Md. Mar. 8, 2013) (unpublished); Benton v. Astrue, Civil Action No. 0:09-892-HFF-PJG, 2010 WL 3419272, at *1 (D.S.C. Aug. 30, 2010) (unpublished); Pittman v. Massanari, 141 F. Supp. 2d 601, 608 (W.D.N.C. 2001); Ward v. Chater, 924 F. Supp. 53, 55-56 (W.D. Va. 1996).

that Plaintiff's total disability began on May 26, 2011. (Tr. 544.)

Here, the ALJ's evaluation of Dr. Wahrenberger's opinions complied with the regulatory requirements. The ALJ assessed Dr. Wahrenberger's opinions as follows:

> The undersigned has fully considered the conclusion of Dr. Wahrenberger indicating that [Plaintiff] is disabled. This opinion that [Plaintiff] is precluded from working is entitled to little, if any, weight since this conclusion is not supported by the medical records and is inconsistent with the record as a whole. Dr. Wahrenberger's own records show that except for some tenderness and pain [Plaintiff's] examinations have been essentially normal with no deformities, cyanosis, edema or peripheral pulses. [Plaintiff's] gait and station have been normal. Further, x-rays in June 2011 of [Plaintiff's] wrists and hips showed only mild osteoarthritis and x-rays of the lumbar spine showed only mild multilevel degenerative disc disease with no erosive changes. X-rays of the knees showed mild to moderate tri-compartmental osteoarthritis with no erosive changes, fracture or dislocation and no joint effusion. In addition, conclusion that [Plaintiff] should be considered "disabled" is an issue reserved to the Commissioner. In sum, the undersigned has resolved all doubt in [Plaintiff's] favor and limited her to light work with a sit/stand option.

(Tr. 22.)

First, the ALJ properly discounted Dr. Wahrenberger's opinions in part on the basis that his own treatment notes failed to support his opinions. On the date that Dr. Wahrenberger opined that Plaintiff began her disability, May 26, 2011, Dr. Wahrenberger examined Plaintiff and noted "[n]o misalignment, asymmetry, crepitation, defects, tenderness, masses, effusions, decreased range of motion, instability, atrophy or abnormal strength or tone

11

in the head, neck, spine, ribs pelvis or extremities." (Tr. 223.)
He further stated that Plaintiff did not "have any physical exam
stigmata of rheumatoid arthritis" and that Plaintiff "probably has
low back pain and knee pain secondary to her morbid obesity." (Tr.
224.) Dr. Wahrenberger only examined Plaintiff three more times
between that initial examination and his October 12, 2011
"disability" opinion and, on all three occasions, Plaintiff's
primary complaints did not relate to her arthritis. (See Tr. 216
(visit on July 11, 2011, with complaints of itching and pain in her
hands, hot flashes, and sinusitis), 210 (visit on September 6,
2011, with complaints of eye irritation secondary to an insect
bite), 205 (examination on September 26, 2011, for routine pap
smear with complaints of depression, hot flashes, an infected tooth
and feeling "under the weather" after a flu shot).) Additionally,
Dr. Wahrenberger noted that x-rays revealed only "moderately severe
osteoarthritis in [Plaintiff's] hips, knees, and wrists." (Tr. 207
(emphasis added); see also Tr. 480-82.) Moreover, the record lacks
any support for Dr. Wahrenberger's opinion that Plaintiff suffered
severe osteoarthritis in her shoulders. (See Tr. 545.)
Substantial evidence thus supports the ALJ's decision to discount
Dr. Wahrenberger's opinions in part because the doctor's own
treatment records contradicted those opinions.[6]

_____

[6] Contrary to Plaintiff's argument (see Docket Entry 16 at 7), Dr.
Wahrenberger's prediction that Plaintiff may need hip and knee replacement "in
the future" (Tr. 218) does not provide support for the severity of Plaintiff's
osteoarthritis during the relevant time period in this case. At most, his

Second, in accord with the regulations, the ALJ properly found Dr. Wahrenberger's opinions inconsistent with other medical evidence of record, such as diagnostic tests showing only mild to moderate degenerative changes in Plaintiff's hips, knees, wrists, and lumbar spine (Tr. 480-82, 488), and generally unremarkable physical examinations which showed some tenderness in Plaintiff's knees and spine but good range of motion, full strength, normal sensation, no effusion, and normal gait and posture (Tr. 223-24, 234, 272, 292). Notably, the majority of medical notes in the record involve treatment for primary complaints other than arthritis. (See Tr. 216-18 (insect bite), 233-34 (flu symptoms and chest pain), 245-46 (abdominal pain), 249-50 (urinary incontinence), 254-55 (depression), 271-71 (annual physical), 283-84 (headaches, depression, and chest pain), 306-07 (abdominal pain and depression), 313-14 (annual physical with no complaints), 337-38 (allergic rhinitis and hot flashes), 341 (depression and hot flashes), 344 (cold symptoms), 348-49 (pharyngitis), 353-54 (hot flashes and ear pain), 369-70 (chest pain and shortness of breath), 372-73 (sinusitis), 375 (headaches and gastrointestinal complaints), 380-81 (dizziness from elevated blood pressure), 387-89 (abdominal pain and menopausal symptoms).) Substantial evidence

---

statement acknowledges that osteoarthritis constitutes a progressive disease that will likely continue to worsen into the future.

thus supports the ALJ's decision to discount Dr. Wahrenberger's opinions in part as inconsistent with other evidence of record.[7]

Notably, the consultative examination by Dr. Leff, relied on by Plaintiff, does not support Dr. Wahrenberger's disability opinion. Although Dr. Leff detected puffiness in the joints of Plaintiff's hands, partially normal grip strength, decreased knee range of motion, and an inability to squat (Tr. 158), he did not offer <u>any</u> opinion regarding functional limitations arising from Plaintiff's impairments (Tr. 156-58). Dr. Leff's conclusions thus do not serve to negate the ALJ's conclusion that Dr. Wahrenberger's extreme limitations lacked consistency with other medical evidence of record. Similarly, Plaintiff's statements on the Disability Report and at the hearing which suggest a greater level of impairment than the RFC (<u>see</u> Tr. 34-36, 39-41, 135) do not impact the validity of the ALJ's conclusions regarding Dr. Wahrenberger. The ALJ evaluated Plaintiff's subjective complaints and credibility in accord with the regulations, and found such complaints only partially credible. (Tr. 19; <u>see also</u> 20 C.F.R. §§ 404.1529, 416.929.)

Finally, Plaintiff's argument that the ALJ erred in giving great weight to the opinion of state agency consultative physician Dr. Michael J. Niemiec lacks merit. Dr. Niemiec determined that

---

[7] The ALJ also correctly discounted Dr. Wahrenberger's opinion that Plaintiff's impairments disabled her as an issue reserved to the Commissioner. (Tr. 22; <u>see also</u> 20 C.F.R. §§ 404.1527(e), 416.927(e).)

Plaintiff retained the RFC to perform light work with occasional climbing, balancing, stooping, kneeling, crouching, and crawling. (Tr. 174-80.) Plaintiff contends that Dr. Niemiec's opinion merits little weight because he offered it before the record contained Dr. Wahrenberger's medical records and disability opinion. (Docket Entry 16 at 11-12 (citing <u>Morales v. Apfel</u>, 225 F.3d 310, 319-20 (3d Cir. 2000); <u>Frankl v. Shalala</u>, 47 F.3d 935, 938 (8th Cir. 1995), and Social Security Ruling 96-6p, <u>Policy Interpretation Ruling Titles II and XVI: Consideration of Administrative Findings of Fact by State Agency Medical and Psychological Consultants and Other Program Physicians and Psychologists at the Administrative Law Judge and Appeals Council Levels of Administrative Review; Medical Equivalence</u>, 1996 WL 374180 (Jul. 2, 1996) ("SSR 96-6p")).)

The two non-binding decisions primarily relied on by Plaintiff, <u>Morales</u> and <u>Frankl</u>, do not support an unequivocal ban on an ALJ relying on a non-examining state agency physician's opinion when offered before the record's completion. In <u>Morales</u>, the court made clear that ALJ reliance on state agency non-examining opinions only constitutes error when the ALJ fails to resolve a conflict with other evidence or when the state agency opinion "is <u>overwhelmed</u> by other evidence." <u>Morales</u>, 225 F.3d at 320. Here, the ALJ explained why he did not credit Dr. Wahrenberger's conflicting opinion and, as discussed above, far from "overwhelming" Dr. Niemiec's opinion, the medical evidence post-

dating Dr. Niemiec's opinion provides further support for his opinion. Similarly, in <u>Frankl</u>, the plaintiff suffered a deterioration in his condition after the non-examining physician's RFC assessment. <u>Frankl</u>, 47 F.3d at 938-39. In this case, the record establishes no such deterioration in Plaintiff's condition after Dr. Niemiec's August 4, 2010 assessment.[8]

Numerous district court cases within the Fourth Circuit similarly reflect the view that ALJ reliance on non-examining state agency physicians' RFC assessments does not constitute error so long as such opinions find support in the entire record. <u>See, e.g.,</u> <u>Thacker v. Astrue</u>, 2011 WL 7154218, at *6 (W.D.N.C. Nov. 28, 2011) (unpublished) ("The fact that the state agency physician did not have access to the entire evidentiary record - because the record was incomplete at the time of the assessment - is inconsequential as the ALJ considered the entire evidentiary record and substantial evidence supports his determination. Moreover, there is nothing in the additional medical evidence subsequently submitted by Plaintiff to indicate that she possessed limitations

---

[8]    Indeed, SSR 96-6p recognizes that ALJ reliance on state agency opinions depends on their consistency with evidence subsequently received by the ALJ and Appeals Council. <u>See</u> SSR 96-6p, 1996 WL 374180, at *2 (recognizing that "the opinions of State agency medical and psychological consultants and other program physicians and psychologists can be given weight only insofar as they are supported by evidence in the case record, considering such factors as the supportability of the opinion in the evidence <u>including any evidence received at the administrative law judge and Appeals Council levels that was not before the State agency</u>, the consistency of the opinion with the record as a whole, including other medical opinions, and any explanation for the opinion provided by the State agency medical or psychological consultant or other program physician or psychologist") (emphasis added).

beyond light work." (internal citation omitted)); <u>Bryant v. Astrue</u>,
No. 3:08CV719, 2009 WL 6093969, at *9 & n.11 (E.D. Va. Jul. 15,
2009) (unpublished) (affirming ALJ's decision to give non-examining
state agency consultants' assessment great weight as "consistent
with the actual medical findings and conservative treatment of the
claimant's treating physicians, and with [the claimant's] admitted
activities of daily living" even though such consultants "did not
have the opportunity to observe the claimant or the opportunity to
consider additional evidence submitted subsequent to their review
of the record"); <u>Bracey v. Astrue</u>, No. 5:07-CV-265-FL, 2009 WL
86572, at *3 (E.D.N.C. Jan. 6, 2009) (unpublished) (finding no
error in ALJ's reliance on state agency consultants' opinions where
"treatment notes and clinical findings . . . submitted after the
[consultants'] assessments indicate[d] similar complaints and
assessments as those reviewed by the . . . consultants" and noting
that the ALJ considered the additional evidence, which did "not
demonstrate a marked change for the worse in [the] plaintiff's
health").

In sum, substantial evidence supports the ALJ's decision to
discount the opinions of Dr. Wahrenberger.

## 2.   Sit/Stand Option

Next, Plaintiff asserts that the ALJ erred by failing to
specify in the RFC assessment how frequently Plaintiff would need
to alternate between sitting and standing.  (Docket Entry 16 at 12-

17

15.)  According to Plaintiff, that error has significance because a claimant who "must alternate between sitting and standing" cannot perform "either the prolonged sitting contemplated in the definition of sedentary work . . . or the prolonged standing or walking contemplated for most light work." (Id. at 13 (citing Social Security Ruling 83-12, Titles II and XVI: Capability to Do Other Work – the Medical-Vocation Rules as a Framework for Evaluating Exertional Limitations Within a Range of Work or Between Ranges of Work, 1983 WL 31253, at *4 (1983)).)  Thus, Plaintiff argues, if the frequency with which she must alternate sitting and standing more closely resembles sedentary work than light work, Rule 201.14 of the Medical Vocational Rules would direct a finding of "Disabled." (Id. at 14-15.)  That argument lacks merit.

This Court (per Chief United States District Judge William L. Osteen, Jr.) recently addressed and rejected a similar argument as follows:

> [W]here an ALJ fails to specify the frequency of alteration in a sit/stand option, the reasonable implication is that the claimant can sit or stand at his own volition.  Though the ALJ here failed to specify in a hypothetical to the VE the frequency of alteration in a hypothetical sit/stand option — and the VE never testified as to the frequency — case law suggests it was implicit that the claimant should be able to sit or stand at-will.

Campbell v. Colvin, No. 1:11CV327, 2014 WL 2815781, at *5 (M.D.N.C. June 23, 2014) (unpublished) (internal footnote omitted) (citing Williams v. Barnhart, 140 F. App'x 932, 936-37 (11th Cir. 2005);

Wright v. Astrue, No. 1:09CV0003, 2012 WL 182167, at *8 (M.D.N.C. Jan. 23, 2012) (Auld, M.J.) (unpublished); Vallejo v. Astrue, No. 3:10-CV-00445-GCM-DCK, 2011 WL 4595259, at *8-10 (W.D.N.C. Aug. 4, 2011) (unpublished); Smith v. Astrue, No. 5:09cv158/RS/EMT, 2010 WL 3749209, at *19 n.26 (N.D. Fla. Aug. 25, 2010) (unpublished)).

Moreover, at step five, the ALJ's hypothetical question to the VE included an RFC for light work with, inter alia, a sit-stand option, and the VE cited three light jobs available in significant numbers in the national economy that would accommodate a sit-stand option. (Tr. 44.) Plaintiff failed to challenge the VE's citation of those jobs at the hearing (id.), a fact which further undermines her position, see Campbell, 2014 WL 2815781, at *5 ("Plaintiff has not pointed to any evidence or explained why he cannot perform the jobs identified by the VE based upon his ability to sit or stand, and Plaintiff's counsel did not question the VE during the hearing on the frequency issue. Plaintiff's argument is weak.") (internal citation omitted)).

Accordingly, the Court should reject Plaintiff's second assignment of error.

## 3. Mental RFC

Next, Plaintiff maintains that the mental component of the RFC, "simple routine repetitive tasks involving minimal contact with the public" (Tr. 18), does not adequately encompass the ALJ's step three finding that Plaintiff's mental impairments impose

moderate limitation on her concentration, persistence, and pace (id.). (Docket Entry 16 at 15-17.) Plaintiff asserts that, "[i]n the Fourth Circuit, if the mental RFC and concomitant hypothetical assumption to the [VE] do not <u>accurately</u> set forth <u>all</u> of [Plaintiff's] <u>individual</u> impairments and limitations, the response given cannot be substantial evidence supporting [the] ALJ's denial of benefits." (<u>Id.</u> at 17 (citing <u>Walker v. Bowen</u>, 889 F.2d 47, 50 (4th Cir. 1989).) Plaintiff's argument provides no basis for relief.

At step three of the SEP, the ALJ concluded that Plaintiff's mental impairment did not meet or equal the severity of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. (Tr. 17-18.) In that regard, the ALJ expressly considered whether Plaintiff's mood disorder met or equaled the severity of Listing 12.04, Affective Disorders, and, in finding that it did not, assessed Plaintiff with "moderate" limitation in concentration, persistence, and pace. (Tr. 18.) The ALJ acknowledged in his decision that his step three finding did not constitute an RFC and that the mental RFC used at steps four and five required a more detailed assessment. (<u>Id.</u>) The ALJ then formulated Plaintiff's RFC, finding that she remained capable of performing "simple routine repetitive tasks involving minimal contact with the public." (<u>Id.</u>) Judges of this Court and others within the Fourth Circuit have recognized that a limitation to simple, routine,

repetitive tasks properly accounts for moderate limitation in concentration, persistence, and pace. Clark v. Colvin, No. 9:13-CV-0954 DCN, 2014 WL 2091255, at *8 (D.S.C. May 19, 2014) (unpublished); Ramsey v. Colvin, No. 1:10CV618, 2014 WL 639562, at *5 (M.D.N.C. Feb. 18, 2014) (Auld, M.J.) (unpublished), recommendation adopted, slip op. (M.D.N.C. Mar. 27, 2014) (Tilley, S.J.); Parker v. Astrue, 792 F. Supp. 2d 886, 896 (E.D.N.C. 2011). Thus, the ALJ had no obligation to expressly include in his RFC an additional limitation regarding concentration, persistence, and pace.

### 4.     Combined Effect of Impairments

Finally, Plaintiff contends that the ALJ erred by failing to explain his evaluation of the combined effect of all of Plaintiff's impairments. (Docket Entry 16 at 17-19.) Although Plaintiff recognizes that the ALJ acknowledged his obligation to consider the combined effect of Plaintiff's impairments in his decision (Tr. 15), Plaintiff maintains that the ALJ's failure to explain how he actually analyzed the cumulative impact of Plaintiff's impairments warrants remand (Docket Entry 16 at 19 (citing Reichenbach v. Heckler, 808 F.2d 309, 312 (4th Cir. 1985), and Lemacks v. Astrue, Civ. No. 8:07-2438-RBH-BHH, 2008 WL 2510087, at *4 (D.S.C. May 29, 2008) (unpublished) (in turn citing Alonzeau v. Astrue, Civ. No. 0:06-2926-MBS-BM, 2008 WL 313786, at *3 (D.S.C. Feb. 1, 2008) (unpublished)))). This contention warrants no relief.

Although <u>Alonzeau</u> and <u>Lemacks</u>, 2008 cases from the United States District Court for the District of South Carolina, both hold that an ALJ reversibly errs by failing to expressly explain his or her analysis of the synergistic effect of all of a claimant's impairments, <u>Alonzeau</u>, 2008 WL 313786, at *3; <u>Lemacks</u>, 2008 WL 2510087, at *4, the weight of authority, including more recent cases from the District of South Carolina, does not support Plaintiff's argument, as recognized in the following well-reasoned case:

> When dealing with a claimant with multiple impairments, the Commissioner must consider the combined effect of a claimant's impairments and not fragmentize them." <u>Walker v. Bowen</u>, 889 F.2d 47, 50 (4th Cir. 1989) (citing <u>Reichenbach v. Heckler</u>, 808 F.2d 309 (4th Cir. 1985)[)]. This requires the ALJ to "adequately explain his or her evaluation of the combined effects of the impairments." <u>Id.</u> The ALJ's duty to consider the combined effects of a claimant's multiple impairments is not limited to one particular aspect of review, but is to continue "throughout the disability determination process." 20 C.F.R. § 404.1523.

> Following the <u>Walker</u> decision, the Fourth Circuit has provided little elaboration on what constitutes an "adequate" combined effect analysis. However, other circuits have shown great deference to the Commissioner in addressing the same issue.[FN2] In an unpublished opinion decided after <u>Walker</u>, the Fourth Circuit seems to fall in line with these other circuits. See <u>Green v. Chater</u>, 64 F.3d 657, 1995 WL 478032 (4th Cir. 1995). In the opinion, the court found that the district court "correctly determined that the ALJ had adequately explained his evaluation of the combined effect of [the claimant's] impairments." <u>Id.</u> at *3. In reaching this conclusion, the court focused on the ALJ's conclusory statement that he had considered all of the claimant's impairments, both singularly and in combination and then noted evidence that was consistent with this conclusion. <u>Id.</u> This evidence consisted of (1) the ALJ's finding

that the claimant's combination of impairments precluded heavy lifting; (2) the ALJ's listing and consideration of each of the alleged impairments; and (3) the ALJ's finding that many of the claimant's symptoms were treatable. Id. Thus, this limited threshold for an "adequate" combined effect analysis suggests that "Walker was not meant to be used as a trap for the Commissioner." Brown v. Astrue, 0:10-cv-01584-RBH, 2012 WL 3716792, at *6 (D.S.C. Aug. 28, 2012). "Accordingly, the adequacy requirement of Walker is met if it is clear from the decision as a whole that the ALJ considered the combined effect of a claimant's impairments." Id.

> FN2. See Gooch v. Secretary, Health & Human Servs., 833 F.2d 589, 592 (6th Cir. 1987) ("[T]he fact that each element of the record was discussed individually hardly suggests that the totality of the record was not considered, particularly in view of the fact that the ALJ specifically referred to 'a combination of impairments' in deciding that [the plaintiff] did not meet the 'listings.'"); Browning v. Sullivan, 958 F.2d 817, 821 (8th Cir. 1992) ("After separately discussing [the plaintiff's] physical impairments, affective disorder, and complaints of pain, as well as her daily level of activities, the ALJ found that her impairments do not prevent [her] from performing her past relevant work. To require a more elaborate articulation of the ALJ's thought processes would not be reasonable." (internal quotation marks omitted)); Eggleston v. Bowen, 851 F.2d 1244, 1247 (10th cir. 1988) ("The ALJ's opinion addresses [the plaintiff's] various impairments, and we find nothing to suggest they were not properly considered.").

Williams v. Colvin, Civ. No. 6:11-2344-GRA-KFM, 2013 WL 877128, at *2 (D.S.C. Mar. 8, 2013) (unpublished); see also Paris v. Colvin, No. 7:12-CV-00596, 2014 WL 534057, at *12 (W.D. Va. Feb. 10, 2014) (unpublished) (holding that "[i]t is apparent from the RFC itself that the ALJ accounted for the cumulative impact of [the plaintiff's] impairments as supported in the record, providing

restrictions that are both mental and physical"); Wilson-Coleman v. Colvin, NO. 1:11CV726, 2013 WL 6018780, at *3 (M.D.N.C. Nov. 12, 2013) (Webster, M.J.) (unpublished) (concluding that "sufficient consideration of the combined effects of a claimant's impairments is shown when each is separately discussed in the ALJ's decision, including discussion of a claimant's complaints of pain and level of daily activities" (quoting Baldwin v. Barnhart, 444 F. Supp. 2d 457, 465 (E.D.N.C. 2005), aff'd, 179 F. App'x 167 (4th Cir. 2006)) (internal brackets omitted)), recommendation adopted, slip op. (M.D.N.C. Dec. 6, 2013) (Schroeder, J.); Jones v. Astrue, No. 5:07-CV-452-FL, 2009 WL 455414, at *15 (E.D.N.C. Feb. 23, 2009) (noting that ALJ's RFC assessment and summarization of medical records as to each impairment indicate ALJ "considered all of [the c]laimant's mental and physical limitations together").

Here, the ALJ provided a thorough discussion of the medical evidence and discussed each of Plaintiff's alleged impairments, both severe and non-severe. (Tr. 16-23.) At step three, the ALJ expressly found that Plaintiff did "not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments." (Tr. 17 (emphasis added).) In conjunction with the RFC determination, the ALJ stated that he had "considered all symptoms and the extent to which these symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence." (Tr. 18.) With

regard to Plaintiff's obesity, the ALJ remarked that he evaluated whether Plaintiff's obesity caused "an adverse impact upon her co-existing impairments." (Tr. 17.) Moreover, the ALJ's RFC, limiting Plaintiff to light work with a sit/stand option involving simple, routine, and repetitive tasks and minimal contact with the public (Tr. 18), clearly accounted for Plaintiff's physical and mental impairments. Thus, the ALJ's decision, as a whole, adequately demonstrates that he considered Plaintiff's impairments in combination in accordance with <u>Walker</u>.

As a final note, even if the Court should find that the ALJ did not adequately explain his analysis of the cumulative effect of Plaintiff's impairments, Plaintiff has not made any attempt to show how a more complete analysis would have resulted in a more restrictive RFC or a different outcome in the case and, thus, such harmless error does not warrant remand. <u>See</u> <u>Anderson v. Colvin</u>, No. 1:10CV671, 2013 WL 3730121, at *7 (M.D.N.C. Jul. 12, 2013) (Webster, M.J.) (unpublished) ("Plaintiff has failed to establish how further scrutiny of the combination of her impairments results in any greater functional limitations than those already set forth in her RFC."), <u>recommendation adopted in relevant part</u>, 2014 WL 1224726 (M.D.N.C. Mar. 25, 2014) (Osteen, C.J.) (unpublished).

**IT IS THEREFORE RECOMMENDED** that the Commissioner's decision finding no disability be affirmed, that Plaintiff's Motion for Summary Judgement (Docket Entry 15) be denied, that Defendant's

Motion for Judgment on the Pleadings (Docket Entry 17) be granted, and that this action be dismissed with prejudice.

_____/s/ L. Patrick Auld_____
**L. Patrick Auld**
**United States Magistrate Judge**

February 5, 2015